IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIMPLE KHANCHANDANI, individually and on behalf of others similarly situated, Plaintiff, | § § § § § § § § § § | |
| v. | | No. 3:25-CV-793-K |
| ASK IT SOLUTIONS, LLC, et al., Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Dimple Khanchandani's Motion for Enforcement of the Parties' Settlement Agreement and Sanctions Against Defendants filed on December 8, 2025. (Dkt. No. 43 ("Mot.").) Plaintiff filed a supporting appendix with the motion that contains a copy of the executed Settlement Agreement. (Dkt. No. 43-1 ("P. App.").) After a substitution of counsel, ASK IT Solutions, LLC and Sai Kiran Singh Takoor ("Sai Kiran") (collectively "Defendants") filed a response on January 27, 2026. (Dkt. No. 55 ("Resp.").) Plaintiff filed her reply on February 10. (Dkt. No. 57 ("Reply").) United States District Judge Ed Kinkeade referred the motion to the undersigned magistrate judge for a hearing, if necessary, and recommendation pursuant to 28 U.S.C. § 636(b). (Dkt. No. 44.)

For the reasons discussed below, the undersigned recommends that the Court grant in part the motion to enforce by concluding that the Settlement Agreement is a valid and binding contract, deny the motion to extent it seeks an order imposing

sanctions or finds contempt of court, enter judgment dismissing this action with prejudice, and decline to retain jurisdiction for continued enforcement of the Settlement Agreement.

## I. BACKGROUND

Khanchandani filed this lawsuit on April 1, 2025, asserting claims against her former employer, ASK IT Solutions and associated individuals relating to unpaid wages, including overtime wages, and for retaliation in violation of the Fair Labor Standards Act ("FLSA"). (*See* Dkt. No. 1.) Plaintiff served ASK IT Solutions by serving its registered agent and filed proof of service. (Dkt. No. 9.) And Defendants' former counsel stated that he agreed to accept service of process on behalf of each of the individual defendants. (*See* Dkt. No. 22 at 2 ¶ 4.)

Counsel first appeared in this action on behalf of Defendants on April 23, 2025. (Dkt. No. 12.) Defendants requested, and the Court granted, three unopposed extensions of Defendants' deadline to file an answer to Plaintiff's complaint. (Dkt. Nos. 13, 19, 22, 23, 24, 25.) In the last two instances, Defendants represented that the extension was needed to allow for continued settlement discussions or mediation. (Dkt. No. 22 at 2; Dkt. No. 24 at 2.)

On July 23, 2025, the parties filed a Joint Notice of Settlement asking the Court to vacate pending deadlines but leave the case open for 30 days while they finalized the settlement agreement and dismissal papers. (Dkt. No. 27.) The Court administratively closed the case and ordered the parties file dismissal papers by

September 12, 2025.  (Dkt. No. 28.)  On September 10, however, the parties filed a joint motion to extend the deadline for dismissal papers again.  (Dkt. No. 29.)  In the motion, they advised that they signed a confidential Settlement Agreement on August 28, 2025, but Defendant did not make the first of multiple payments by the deadline established in the Settlement Agreement.  (Dkt. No. 29 at 2.)  The parties noted that Defendant advised of "unexpected issues" that delayed the first settlement payment and that "Defendant is actively seeking financing to fund the settlement," which was taking longer than anticipated.  (*Id.* at 2.)  The Court gave the parties additional time to submit the dismissal documents.  (Dkt. No. 30.)

After additional time passed without Khanchandani receiving any payment, she filed the instant motion to enforce the settlement agreement and impose sanctions.  Defendants' counsel sought to withdraw from the case (*see* Dkt. Nos. 37, 48), and was allowed to do so once successor counsel appeared on behalf of Defendants ASK IT Solutions and Sai Kiran (*see* Dkt. Nos. 53, 56).

Khanchandani asserts that, through a mediation on July 21, 2025, the parties reached a binding agreement to settle the case and executed the written Settlement Agreement on August 28.  (Mot. at 4.)  The Settlement Agreement was entered into between Khanchandani and ASK IT Solutions, LLC, and Sai Kiram signed it on behalf of ASK IT Solutions.  (P. App. 4, 11.)  The Agreement requires ASK IT Solutions to make four partial payments of the settlement amount, on August 30, September 15, October 15, and November 15, 2025.  (P. App. 5-6.)  Late payments

would incur additional daily penalties. (P. App. 10.) The Settlement Agreement also provided that, in exchange for consideration received from ASK IT, Khanchandani "forever releases and discharges ASK IT and its affiliates, parents, predecessors, successors, employees and agents (including, without limitation, Sai Kiran)" from all wage and hour claims. (P. App. 7.) The Agreement further required Khanchandani to dismiss the lawsuit upon executing the Settlement Agreement. (P. App. 7.)

Having not received any payment under the Settlement Agreement, Khanchandani asks the Court enforce the contract, order "Defendants" to pay the settlement amount and late penalties provided for in the Settlement Agreement, retain jurisdiction over this matter, enforce its order through contempt sanctions, and order Defendants to pay Khanchandani's attorney's fees and costs incurred to enforce the agreement. (*See* Mot.) Defendants acknowledge that an enforceable agreement was created between Khanchandani and ASK IT Solutions and do not oppose enforcement of the Settlement Agreement. (Resp. at 1-2.) They do oppose the imposition of sanctions. Defendants also ask the Court to craft an alternative payment schedule, waive or reduce late penalties required under the Settlement Agreement, and retain jurisdiction.

## II.  LEGAL STANDARDS

"A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d

386, 389 (5th Cir. 1984).  Where, as here, the claims before the Court are premised on federal law, "[q]uestions regarding the enforceability or validity of such agreements are determined by federal law[.]"  *Mid-South Towing Co.*, 733 F.2d at 389. Federal law treats a settlement agreement as a contract, *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992), meaning that "[a] binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance," *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (internal quotation marks omitted).  "Federal law does not require settlement agreements to be reduced to writing."  *E.E.O.C. v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011).

Although the Court is guided by federal law, "[t]he federal law of contracts uses the core principles of the common law of contracts that are in force in most states."  *Bowers v. Abundant Home Health, LLC*, No. 3:16-CV-1314-C, 2021 WL 706783, at *4 (N.D. Tex. Jan. 25, 2021) (internal quotation marks omitted), *accepted*, 2021 WL 693652 (N.D. Tex. Feb. 23, 2021).  "Because 'federal contract law is largely indistinguishable from general contract principles under state common law,' the Court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive."  *Id.* (quoting *In re Deepwater Horizon*, 786 F.3d 344, 354–55 (5th Cir. 2015)).

## III.  ANALYSIS

**A.    The parties agree there is an enforceable settlement agreement between Khanchandani and ASK IT Solutions.**

This is not a case in which the Court must determine whether the parties entered into a binding agreement to settle the case.  Khanchandani and Defendants agree that the Settlement Agreement is a binding contract.  (*See* Mot. at 8; Resp. at 1 ("Defendants acknowledge the Settlement Agreement executed on August 28, 2025, is valid and binding.").)  Indeed, the Settlement Agreement is written, signed by Khanchandani and ASK IT Solutions (through Sai Kiran), and contains all the material terms of the agreement.  The Court should conclude that the Settlement Agreement is valid and enforceable.

**B.    The Court should decline the parties' requests to impose sanctions or modify the Settlement Agreement.**

Because the parties agree that the Settlement Agreement is binding and enforceable, the issues in dispute concern the relief the Court can and should grant based on the enforceable agreement.  In addition to deeming the Settlement Agreement enforceable, Khanchandani asks the Court to compel "Defendants" to pay the settlement amount and impose sanctions, including by using its contempt power. (Mot. at 9-11.)  Defendants ask the Court to change the terms of the Settlement Agreement by reviving the long-lapsed payment deadlines to push them months into the future and either waiving or reducing the late penalties imposed under the Agreement.  (Resp. at 4-5.)  Both parties ask the Court to retain

jurisdiction to enforce the Settlement Agreement, although Defendants asks that it do so "without contempt threat."  (Mot. at 9; Resp. at 5.)  Setting aside for the moment their last request, the undersigned addresses each one in turn.

1. **Only ASK IT Solutions is responsible for making payments under the Settlement Agreement.**

The Court should decline Khanchandani's request to order all "Defendants" to pay the settlement amount.  Khanchandani entered into an agreement with ASK IT Solutions alone, and only ASK IT Solutions is obligated to make payments to Khanchandani.  (P. App. 4 ("This Settlement Agreement and Release . . . is entered into by and between Plaintiff Dimple Khanchandani . . . and ASK IT Solutions, LLC . . . on behalf of itself, its parents, subsidiaries, officers, directors, owners, shareholders, and agents, individually and in their official capacities[.]").)  Defendant Sai Kiran signed the agreement for ASK IT Solutions, and there is no indication that he also executed the agreement in his personal capacity.  (*See* P. App. 11.)  *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559–62 (5th Cir. 2011) (concluding person who signed arbitration agreement in representative capacity did not become personally bound); *Elgohary v. Herrera*, 405 S.W.3d 785, 790-91 (Tex. App.—Houston 2013, no pet.) ("[S]igning a contract in a representative capacity does not bind the agent personally to the contract.").  To the extent Khanchandani asks the Court to order the individual Defendants Sai Kiran, Paul Petrucelli, or Keerthi Chenna to make payments based on the Settlement Agreement, she has not

shown that these Defendants have agreed to undertake any personal obligation to make such payments.

### 2.    Khanchandani has not shown the Defendants have violated a court order or engaged in bad faith conduct warranting sanctions.

Khanchandani's request for court-imposed sanctions should be denied. She points to no statute or rule authorizing sanctions in this circumstance. Rather, she relies solely on the Court's inherent authority to impose sanctions for vexatious, oppressive, bad faith, or wanton misconduct. (Mot. at 10.)

"Courts have inherent authority to impose sanctions on a party or attorney when they find that the party or attorney has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fuller v. CIG Fin., LLC*, No. 3:22-CV-1289-D, 2023 WL 8482889, at *6 (N.D. Tex. Dec. 7, 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "To award sanctions under its inherent power, a court 'must make a specific finding' of bad faith." *Id.* (quoting *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016)).

In Khanchandani's view, Defendants have engaged in bad faith misconduct by failing to pay the settlement amount. She considers these circumstances "strikingly similar" to those in *Sixela Inv. Grp. v. Hope Fed. Credit Union*, No. CV 23-0277, 2025 WL 2882059 (W.D. La. Oct. 8, 2025). (Reply at 6-7.) The undersigned disagrees. In that case, the court pointed to a considerable record supporting its finding that a party engaged in bad-faith conduct, specifically noting the party failed to comply with "numerous" court-ordered deadlines and was "uncooperative,"

"deceitful to the Court," "noncommunicative," and "primarily responsible for . . . misconduct during litigation," and it "attempted fraud on the Court." *Id.* at 7–8. In contrast to the prolonged misconduct and attempted fraud found there, this is a case in which a defendant has not followed through on a promise to pay a settlement agreement. ASK IT Solutions contends that its inability to pay is due to unexpected issues and its failure to find financing for the settlement. (*See* Resp. at 2; *see also* Dkt. No. 29 at 2.) Khanchandani believes otherwise and argues that ASK IT Solutions's refusal to follow through on its obligations results from Defendants' bad faith misconduct. But her belief that Defendants have acted in bad faith is not sufficient alone to warrant sanctions. Whether her allegation are true or not, the record does not equip the Court to find based on nonpayment alone that ASK IT Solutions has been deceitful or otherwise engaged in bad faith. Khanchandani has not made the case that the Court can impose sanctions under its inherent authority, much less that it should.

Likewise, the undersigned concludes that Khanchandani's request for contempt sanctions should be denied. To warrant contempt sanctions, Khanchandani would have to show, among other things, that the contemnor failed to comply with a court order. *See United States v. City of Jackson, Miss.*, 359 F.3d 727,

731 (5th Cir. 2004).  As stated above, Khanchandani does not point to any court order that ASK IT Solutions or any other defendant has violated.[1]

### 3.    Defendants have not shown any basis upon which the Court may modify the Settlement Agreement.

Defendants request as "alternative relief" that the Court issue an order postponing ASK IT Solutions's obligation to make payments under the Settlement Agreement until at least 30 days after the Court resolves the instant motion.  (Resp. at 4-5.)  They also ask the Court to waive or reduce the contractual late penalties that have accrued.  (*Id.* at 5.)

Defendants' request that the Court order enforcement of the Settlement Agreement on modified terms is apparently based on equitable considerations, because they have not pointed to any legal authority that allows the Court to modify the agreement.  (*See* Resp. at 4-5.)  Neither party suggests that the Settlement Agreement is ambiguous with respect to the late penalties, and, in the absence of any ambiguity, the Court seeks to enforce the agreement as it was written, not as Defendants now would like it to be.  *Cf. Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005) ("The court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written."); *see also Est. of Alexander v. DLJ Mortg. Cap., Inc.*, No.

---

[1] To the extent Khanchandani is instead asking the Court to enter orders that it would then enforce using its contempt power, the undersigned addresses that request below. *See infra.* § III.C.

3:15CV293-TSL-RHW, 2017 WL 9512369, at *2 (S.D. Miss. Aug. 28, 2017) ("[S]ettlement agreements are enforced as a matter of contract law and courts will not rewrite them to satisfy the desires of either party." (internal quotation marks and brackets omitted) (applying Mississippi law)).  ASK IT Solutions, represented by counsel, entered into a contract resulting from an arms-length negotiations, and it agreed to incur substantial monetary penalties if it did not timely fulfill its obligation to pay the settlement amount.  Even if the Court has authority under law or in equity to reform the Settlement Agreement, Defendants have not shown any reason why the Court should relieve ASK IT Solutions of the burden it voluntarily incurred.

**C.    The Court should enter judgment dismissing this action with prejudice and decline to retain jurisdiction over further enforcement of the Settlement Agreement.**

As explained above, the parties do not dispute that the Settlement Agreement is binding and should be enforced.  Under the terms of that agreement, the parties agreed that Khanchandani "fully, finally, and forever release[d]" Defendants "from any and all federal or state wage and hour statutory or common law claims."  (P. App. 7 ¶ 3.1.)  Additionally, Khanchandani agreed to "voluntarily dismiss the Complaint with prejudice upon executing th[e] Agreement."  (P. App. ¶ 3.2.)  Because the parties reached a binding agreement to settle and dismiss this lawsuit, the Court should enter judgment dismissing the lawsuit based on their settlement.

The final issue to consider is the parties' mutual request that the Court retain jurisdiction to enforce the Settlement Agreement after entry of judgment.  The

Supreme Court has made clear that enforcement of a settlement agreement after a case is dismissed "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). In *Kokkonen*, the Court recognized that a district court can retain jurisdiction to enforce a settlement agreement beyond entry of judgment when doing so comes within its ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees." *See id.* at 380. To exercise such ancillary jurisdiction, the parties' obligations to comply with the settlement agreement must be made part of the dismissal order. *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002). "The [Supreme] Court specified two ways in which a court may make a settlement agreement part of its dismissal order: 'either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 381).

Although the Court may retain jurisdiction to enforce the settlement post-judgment, whether to do so is entrusted to the Court's discretion. *See Kokkonen*, 511 U.S. at 381 ("[T]he parties' compliance with the terms of the settlement contract . . . may, in the court's discretion, be one of the terms set forth in the order[.]"); *see also Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 456 (5th Cir. 2022); *Lelsz v. Kavanagh*, 903 F. Supp. 1037, 1040 (N.D. Tex. 1995) ("The question, then, is not whether the Court can dismiss with prejudice and retain jurisdiction, but

whether the Court *should*.").  A court is not obligated to grant parties' requests to retain jurisdiction.  *See Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 381 (D.N.J. 2011) ("Parties, even if they mutually agree, do not have a right to incorporation of all their settlement terms in a dismissal order, since nowhere in *Kokkonen* does it say that a court *must* allow such an incorporation." (internal quotation marks and brackets omitted)).

After weighing several factors, the undersigned concludes the Court should decline to retain jurisdiction here.  First, declining to retain jurisdiction will not significantly prejudice the parties.  ASK IT Solutions has acknowledged that the Settlement Agreement is a binding contract, and Khanchandani can readily enforce her rights under that contract in a new lawsuit alleging that ASK IT Solutions has committed a material breach by nonpayment.  *See Cross Media Mktg. Corp. v. Budget Mktg., Inc.*, 319 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (declining to retain jurisdiction where "the only practical effect of this ruling is that the plaintiff will have to commence a new action and pay a filing fee to sue on the agreement").

Second, enforcement of the Settlement Agreement through the Court's ancillary jurisdiction may limit Khanchandani's available remedies.  If, for example, Khanchandani believes Sai Kiran or anyone else lured her into executing the Settlement Agreement and releasing her claims without any intention of paying her, her ability to pursue fraud or other claims would be limited through a continuation of this lawsuit.  *See Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 215–16 (5th

Cir. 2023) (holding district court lacked jurisdiction to address claim that party fraudulently induced settlement agreement although court retained jurisdiction to enforce settlement agreement). By filing a new lawsuit on the Settlement Agreement, Khanchandani would have the full panoply of claims and remedies available to her.

Third, circumstances suggest that enforcement of the Settlement Agreement would impose substantial burdens on the Court. *See Cross Media Mktg.*, 319 F. Supp. 2d at 483 (noting court "might . . . properly decline to retain jurisdiction where the administration of a settlement threatened to impose undue burdens on it"). This is not a case in which the parties ask a court to retain jurisdiction so that it can readily address the matter should something go awry in the future. Nonperformance of the Settlement Agreement is already at issue, and it is obvious that substantial additional litigation will ensue. Rather than resolve matters of breach relating to the Settlement Agreement through collateral proceedings anchored to this FLSA action, they should instead be adjudicated in an action dedicated to the contractual (and possibly other tort) claims.

Fourth, the parties have not shown any reason why the Court's continued jurisdiction is needed for any relief that might become necessary. Khanchandani asks the Court to at least threaten the use of its contempt power if ASK IT Solutions does not make good on its promise to pay her. But the only obligation involved is the payment of money. There may be instances when exercising the Court's

-14-

contempt power to enforce an obligation freely undertaken by a party is both possible and appropriate. But it does not appear to be so here. That is, even an obligation to pay money set out in a judgment is generally not enforced by contempt. *See* Fed. R. Civ. P. 69(a)(1) ("[a] money judgment is enforced by a writ of execution[.]"); *see also Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 5459178, at *2 (N.D. Tex. Oct. 29, 2018) ("[A] final judgment per Rule 69 usually is not enforceable by contempt."); *Pemex Exploración Y Producción v. BASF Corp.*, No. CV H-10-1997, 2016 WL 6806421, at *5–6 (S.D. Tex. Aug. 12, 2016) (concluding that contempt sanctions were unavailable for nonpayment of a money judgment). So, to the extent Khanchandi's request for retained jurisdiction is build on an expectation that the Court will hold ASK IT Solutions in contempt for failing to pay her, it might not be a tenable expectation.

Fifth, the Court does not see a strong public interest that weighs in favor of retaining jurisdiction. Here, two private parties—both represented by counsel— entered into an agreement to settle the case.

Considering each these factors together, the undersigned concludes that the Court should not retain jurisdiction to enforce the settlement agreement after entry of judgment. Rather, Khanchandani may enforce her rights in a separate lawsuit.

## IV. RECOMMENDATION

For the reasons discussed, the District Judge should **GRANT IN PART** Plaintiff's Motion for Enforcement of the Parties' Settlement Agreement (Dkt. No.

43) by concluding that the Settlement Agreement is binding and enforceable and **DENY IN PART** Plaintiff's motion to the extent it seeks a finding of contempt or imposition of sanctions. Based on the enforceability of the Settlement Agreement, the Court should enter judgment dismissing this action with prejudice and decline to retain jurisdiction.

        **SO RECOMMENDED** on March 23, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).